```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


UNITED STATES OF AMERICA       :    CRIMINAL ACTION
                               :
     v.                        :    NO. 1:11-CR-53-TCB-ECS-3
                               :
RASHAAD WILSON                 :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**
**Introduction**

This matter is before the court on Defendant's particularized motion to suppress evidence. [Doc. 110]. The government filed its initial response on March 26, 2012, and, after several continuances, an evidentiary hearing was held on October 23, 2012. [Docs. 112, 134]. The transcript was filed November 1, 2012. [Doc. 135]. Defendant's post-hearing brief was filed November 19, 2012, and the government's response thereafter was on January 2, 2013. [Docs. 136, 142]. Defendant was given until January 11, 2013, to file a reply but no reply was filed. The motion is, therefore, now ready for a report and recommendation to the district judge.

The motion seeks to suppress any information obtained through court-ordered release of cell site data concerning a cell phone number allegedly used by Defendant Wilson during a certain time frame. Defendant argues that the government failed to provide sufficiently specific and articulable facts for issuance of the

order under 18 U.S.C. § 2703 to authorize release. Alternatively, Defendant submits that the information derived from the cell site data must be suppressed because it was obtained in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

The government opposes the motion on the merits and raises lack of standing of Defendant to bring the challenge. The government also argues, alternatively, that the good faith exception to the exclusionary rule would apply to mandate that the evidence not be suppressed, even if a showing of probable cause were required.

## II.
## The Applications and Orders

On February 8, 2010, the government filed an application for an order authorizing a pen register, trap and trace and enhanced caller identification device, and for release of subscriber information and historical cell site information. [Gov't Ex. 9]. This application sought an order for release of information relating to Sprint telephone number 240-832-0294, subscribed to by a Billie Morgan, II, P.O. Box 54966, Irvine, California, and allegedly used in the Northern District of Georgia by Rashad LNU. Id. United States Magistrate Judge Janet King signed the requested order on the same day, February 8, 2010. [Gov't Ex. 8, 9]. On December 7, 2010, the government filed another application for an order authorizing

2

release of, among other things, historical cell site information relating to, among others, Metro PCS telephone number 240-832-0294, also subscribed to by Billie Morgan, II, P.O. Box 54966, Irvine, California, and used by Rashad Wilson. [Gov't Ex. 7]. Judge King signed the requested order on the same day, December 7, 2010. [Id.]. The government will seek to use historical cell site information derived only from the February 8, 2010, application and order, and will not rely upon the later December 7, 2010, application and order. See Transcript of October 23, 2012, Hearing at 67-68 [Doc. 135] (hereinafter cited as "T. [page]").

### III.
### Compliance with 18 U.S.C. § 2703(d)

Defendant argues first that the government failed to comply with the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq. [Doc. 110-1 at 2]. Specifically, Defendant argues that the statement of facts supporting the application does not comply with § 2703(d). [Id. at 2-3].

Section 2703(d) provides:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

3

In this case, the government's application complies with § 2703(d). Paragraph 2 of the application recites that the government is conducting an investigation of a home invasion robbery that occurred on January 14, 2010, "during which armed robbers, dressed in police like uniforms, stole drugs and money." [Gov't Ex. 9 ¶ 2]. Paragraph 2 further recites that one of the robbers arrested in the invasion was cooperating and had provided the cell phone number as belonging to Rashad LNU, who is known to have used the telephone number to call co-conspirators at or near the time of the robbery. [Id.]. These are sufficiently specific and articulable facts to show reasonable grounds to believe that these records would be relevant or material to the investigation.

Furthermore, Judge King reviewed the application and signed the order, thereby making the finding required by the statute. [Doc. 8 at 2-3]. Finally, even if there were any deficiency with the statement of facts, or Judge King's adoption thereof, the SCA has been held not to provide Defendant with an exclusionary remedy. See United States v. Steiger, 318 F.3d 1039, 1049 (11th Cir. 2003); accord United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011); United States v. Perrine, 518 F.3d 1196, 1202 (10th Cir. 2008); United States v. Christie, No. 07-332 (HAA), 2009 WL 742720, at *3 (D.N.J. Mar. 18, 2009); United States v. Wellman, No. 1:08-cr-00043, 2009 WL 37184, at *8 n.2 (S.D. W. Va. Jan. 7, 2009); United States

v. Qing Li, No. 07 CR 2915 JM, 2008 WL 789899, at *3 (S.D. Cal. Mar. 20, 2008); United States v. Beckett, 544 F. Supp. 2d 1346, 1350 (S.D. Fla. 2008); United States v. Ferguson, 508 F. Supp. 2d 7, 10 (D.D.C. 2007); Bansal v. Russ, 513 F. Supp. 2d 264, 282-83 (E.D. Pa. 2007); United States v. Sherr, 400 F. Supp. 2d 843, 848 (D. Md. 2005); United States v. Kennedy, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000) ("[S]uppression is not a remedy contemplated under the ECPA."); United States v. Hambrick, 55 F. Supp. 2d 504, 507 (W.D. Va. 1999) ("Congress did not provide for suppression where a party obtains stored data or transactional records in violation of the Act."), aff'd, 225 F.3d 656, 2000 WL 1062039, at *2 n.2 (4th Cir. 2000) (Table); United States v. Reyes, 922 F. Supp. 818, 838 (S.D.N.Y. 1996) ("Exclusion of the evidence is not an available remedy for this violation of the ECPA.").

Accordingly, Defendant's first argument is clearly without merit.

**IV.
Fourth Amendment Analysis**

**A. Reasonable expectation of privacy: Defendant's "Standing"**

The government argues that Defendant has not carried his burden of showing standing to challenge the government's acquisition of the historical cell site records. [Doc. 112 at 25-27]. A defendant has standing to challenge the admission of illegally obtained evidence

5

only if the defendant's own constitutional rights were violated. See United States v. Salvucci, 448 U.S. 83, 86-87, 100 S. Ct. 2547, 2550 (1980). Where Fourth Amendment violations are alleged, defendants lack standing when they did not have a subjective and reasonable expectation of privacy in the area searched when the evidence was seized. See Minnesota v. Carter, 525 U.S. 83, 91, 119 S. Ct. 469, 474 (1998) (no reasonable expectation of privacy and thus no standing to challenge admission of drug evidence seized on premises where defendant was merely short-term guest for commercial purposes). "[O]nly individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007) (per curiam) (quotation marks and citation omitted).

In Rakas v. Illinois, the Court questioned whether it serves any useful analytical purpose to consider the issue of whether Defendant actually enjoys the reasonable expectation of privacy as a preliminary matter of standing, distinct from the merits of a defendant's Fourth Amendment claim, concluding that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." 439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978). Nevertheless, because the parties have argued the issue of standing

6

separately from the merits, I will first discuss standing as a separate issue before alternatively addressing the merits of the Fourth Amendment claims in Part IV.B.

It is now well-settled that "the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise 'illegitimate.'" New Jersey v. T.L.O., 469 U.S. 325, 338, 105 S. Ct. 733, 741 (1985) (citations omitted); see also United States v. Lehder-Rivas, 955 F.2d 1510, 1521 (11th Cir. 1992) ("Before challenging the validity of a search, a defendant must demonstrate a legitimate expectation of privacy in the premises searched."). Thus, an individual who asserts standing to challenge a search bears the burden to demonstrate a legitimate expectation of privacy in the premises that "society is prepared to recognize as reasonable." Rakas, 439 U.S. at 143 n.12, 99 S. Ct. at 430 n.12 (internal quotation marks and citation omitted); see also United States. v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997) (finding appellant failed to carry burden to show a legitimate expectation of privacy in a residence based upon "uncertainty as to when [he] lived there"). Further, expectations of privacy legitimated by law "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Rakas, 439 U.S. at 143 n.12, 99 S. Ct. at 430 n.12.

7

In this case, the undersigned concludes that Defendant has not carried his threshold burden of showing standing —— namely, that he had a subjective and objectively reasonable expectation of privacy in the historical cell phone records, including cell site information, associated with this cell phone.  First, it bears noting that the cell phone itself was not subscribed in Defendant's name.  Nor is there any evidence that the phone account actually belonged to Defendant, notwithstanding it was subscribed in an alias or some other person's name.  Nor is there evidence that he was an authorized user.  There is no evidence at all linking Defendant to the subscriber of the account, "Billie Morgan," except the government's allegation that Defendant used the phone." [Gov't Ex. 8 at 1]; [Gov't Ex. 7 at 1] ("and used by Rashad Wilson").  In particular, there is no evidence from Defendant, by testimony or affidavit, that he was the owner or subscriber of the account, or that he was an authorized user, or that he had any subjective expectation of privacy in these records.

"While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of . . . [the] inquiry." Salvucci, 448 U.S. at 91, 100 S. Ct. at 2553 (citation omitted).  "Other factors to be weighed include whether the defendant has a possessory interest in the thing seized

8

or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." United States v. Pitt, 717 F.2d 1334, 1337 (11th Cir. 1983) (quoting United States v. Haydel, 649 F.2d 1152, 1154-55 (5th Cir. Unit A July 8, 1981)).[1]

Here, evidence of property ownership of this account is completely lacking. There is no evidence linking Defendant to "Billie Morgan." Thus, if Defendant indeed had an undisclosed ownership interest in the account, he is not admitting to it, indicating that he does not want to be associated with it, or is trying to insulate himself from any responsibility for it. There is no evidence that the actual owner of the account gave or loaned him the phone, or that he was an authorized user on the account. Clearly, without any interest in the account, Defendant would have had no right of access to the account, or right to exclude anyone else from the account. Nor could he have taken any precautions that might have been taken by the owner-subscriber to maintain any privacy in the records.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1981.

Upon consideration of all of the above, the Court concludes that this Defendant did not have a subjective or objectively reasonable expectation of privacy upon which to challenge law enforcement's ability to obtain historical cell cite information for this cell phone account. Accord United States v. Suarez-Blanca, No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156, at *7 (N.D. Ga. Apr. 21, 2008). Defendant, in short, lacks standing to challenge the government's acquisition of the cell site data. Despite this finding, however, I will nevertheless address the Fourth Amendment claim on the merits, for the reasons stated above.

**B. The Fourth Amendment**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. The standard to be applied for evaluating whether a Fourth Amendment search has occurred is whether the individual manifested a subjective expectation of privacy in the place or item searched that society is willing to recognize as objectively reasonable. Kyllo v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042-43 (2001); see also Bond v. United States, 529 U.S. 334, 340, 120 S. Ct. 1462, 1466 (2000); California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809,

1811 (1986); Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979). More recently, the Court has held that the government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, also constitutes a "search," without applying the expectation of privacy standard. United States v. Jones, __ U.S. __, 132 S. Ct. 945, 949 (2012).

Defendant submits that in order to obtain cell site data under the Fourth Amendment, the government was required to secure a warrant based on probable cause. [Doc. 110-1 at 4]. Defendant argues that the lower standard of specific and articulable facts provided in the SCA is unreasonable. [Id. at 9]. Defendant cites several cases where a showing of probable cause was required under certain circumstances in order to obtain cell site data. [Id. at 4]; see In re Application of the United States, 809 F. Supp. 2d 113 (E.D.N.Y. 2011); In re Application of the United States, 747 F. Supp. 2d 827 (S.D. Tex. 2010), appeal docketed, No. 11–20554 (5th Cir. Dec. 14, 2011); In re Application of the United States, 736 F. Supp. 2d 578 (E.D.N.Y. 2010), rev'd, No. 10–MC–0550 (E.D.N.Y. Nov. 29, 2011); In re Application of the United States, 534 F. Supp. 2d 585 (W.D. Pa. 2008), aff'd, No. 07-524M, 2008 WL 4191511 (W.D. Pa. Sept. 10, 2008), vacated, 620 F.3d 304 (3d Cir. 2010). Defendant cites these cases for the proposition that applications for cell

11

site data that go beyond a discrete, relatively short period of time implicate the Fourth Amendment. [Doc. 110-1 at 5].

Citing the above cases, and the recent Supreme Court decision of United States v. Jones, __ U.S. __, 132 S. Ct. 945 (2012), Defendant argues that he has a legitimate expectation of privacy in these cell site records, [Doc. 110-1 at 5], but he does not provide a great deal of specification as to the basis for this argument. His argument is largely conclusory, based upon his arguments about the intrusiveness and invasiveness that results from the government's acquisition of such information. He argues that because the government alleged in the application that Defendant may have used the phone, he has a privacy interest in these records. [Id. at 6].

The government responds by distinguishing the cases cited by Defendant, noting that two have been reversed or vacated, and that the majority of courts have concluded that the acquisition of historical cell site location data pursuant to the SCA's specific and articulable facts standard does not implicate the Fourth Amendment, regardless of the time period involved.[2] [Doc. 112 at 15-

---

[2] See, e.g., United States v. Dye, No. 1:10CR221, 2011 WL 1595255, at *9 (N.D. Ohio Apr. 27, 2011); United States v. Velasquez, No. CR 08-0730 WHA, 2010 WL 4286276, at *5 (N.D. Cal. Oct. 22, 2010); United States v. Benford, No. 2:09 CR 86, 2010 WL 1266507, at *3 (N.D. Ind. Mar. 26, 2010); Suarez-Blanca, 2008 WL 4200156, at *8-11; In re Applications of the United States, 509 F.

12

16]. The government also argues that Jones is inapplicable because, among other things, it addressed a GPS tracker attached to an automobile that provided real time location data showing the vehicle's movements, not limited historical cell site data regarding the general location where calls occurred. [Id. at 18-25]. The government again points to the facts it relied upon in arguing lack of standing —— the fact that the phone was subscribed in the name of another, or of an alias; the lack of evidence of Defendant's ownership or possession of the phone; the nature of the information as business records maintained by a third party —— to show a lack of a reasonable expectation of privacy. [Id. at 27, 32].

After consideration of these arguments, and for the reasons stated below, the undersigned concludes that, even if Defendant possessed a sufficient ownership, possession, or usership interest in the subject records to provide him with standing, the Fourth Amendment would not be implicated on the facts presented here. The salient facts determinative of this result are as follows:

First, the government is seeking to use only historical cell site data for a limited period of time, namely twenty-one days prior to the order signed on February 8, 2010. See [T. 67–68]. Second, the government was only allowed in the authorizing order to obtain

---

Supp. 2d 76, 80–81 (D. Mass. 2007).

13

the cell site when a call was placed or received; the site through which a call was routed when it ends; and the site during the call, if available. [Gov't Ex. 8 at 2]. The government was not authorized to obtain any cell site information when the phone was "on" but not in progress; any information from multiple cell towers simultaneously so as to permit location triangulation; or any GPS information on location. [Id.].

As a result of these limitations, the government is unable to pinpoint the exact location at any particular time when the cell phone was used, or to monitor precisely where the cell phone was used over time. [T. 45]. At most, the government could determine whether the phone was used in a general "sector," or area "going out at least a mile in a 120-degree direction" from a particular cell tower. [T. 34, 48]. Furthermore, the government is authorized to receive any such information "only *after* the records or information have come into the possession, domination, or control of the electronic communications service provider," not in real time. [Gov't Ex. 8 at 5 n.2] (emphasis added).

In addition to the above, the records obtained by the government were obtained from a third-party, Sprint, who maintains such records in the regular course of their business. In Smith, the Supreme Court held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."

14

442 U.S. at 743-44, 99 S. Ct. at 2582 (citations omitted). This third party doctrine has been applied to financial records and dialed telephone numbers. See id. at 745-46, 99 S. Ct. at 2583 (installation and use of pen register was not Fourth Amendment search –– Defendant voluntarily conveyed numerical information to company); United States v. Miller, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624 (1976) (financial records voluntarily conveyed to bank were business records of the bank, not Defendant's private papers protected under Fourth Amendment).

As noted by the Maryland District Court in United States v. Graham, "[n]umerous courts have extended the [business records/third party] doctrine well beyond bank records and telephone numbers to, *inter alia*, credit card statements, electric utility records, motel registration records, and employment records," as well as historical cell site location records. 846 F. Supp. 2d 384, 399 (D. Md. 2012) (citing Suarez-Blanca, 2008 WL 4200156, at *8 (collecting cases)). Accordingly, as did the Court in Graham, the undersigned concludes that the third party doctrine is applicable to historical cell site information. "As part of the ordinary course of business, cellular phone companies collect information that identifies the cellular towers through which a person's calls are routed." Graham, 846 F. Supp. 2d at 400. "Like the bank records at issue in Miller, the telephone numbers dialed in Smith, and the subscriber information

15

collected in [United States v.] Bynum, [604 F.3d 161 (4th Cir. 2010),] historical cell site location records are records created and kept by third parties that are voluntarily conveyed to those third parties by their customers." Graham, 846 F. Supp. 2d at 400.

As the court in Graham also discussed, at least one court has found that "cumulative" cell site location records sufficiently implicate Fourth Amendment concerns such that cell phone users can have a reasonable expectation of privacy in such cumulative records, despite the third party doctrine. Id. at 401 (citing In re Application of the United States, 809 F. Supp. 2d 113, 121 (E.D.N.Y. 2011)). The Court in Graham, however, declined to accept this approach, even in light of supportive dicta in concurring opinions in Jones, where Congress, under the SCA, has established a "specific and articulable" facts standard for obtaining such records, thus providing "the necessary judicial backdrop against which executive overreaching is measured." Id. at 403.

In this case, the records that the government relies upon are limited in time frame to twenty-one days prior to issuance of the order — a relatively short time frame for "cumulation" to occur, even if the cumulative effect made a difference. Thus, for the reasons stated above, the undersigned concludes, as did the Court in Graham, that the records at issue were business records kept in the ordinary course of business by the third-party cellular service

16

provider. This information was derived from information voluntarily provided to the provider when the user made or received a call. As such, Defendant has no legitimate expectation of privacy in those records, and the Fourth Amendment was not violated in this case, even if Defendant had threshold "standing" to complain about the acquisition of the records.

## V.
## Good Faith

The government also argues that, even if the Fourth Amendment applied to these circumstances, the officers relied in good faith on the statutory authorization obtained under the SCA, 18 U.S.C. § 2703(c)(1) and (d). [Doc. 112 at 53]. As a result, the government argues that the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422 (1984), and extended in Illinois v. Krull, 480 U.S. 340, 349, 107 S. Ct. 1160, 1166-67 (1987), should apply. The government also argues that, under Davis v. United States, __ U.S. __, 131 S. Ct. 2419 (2011), the exclusionary rule should not apply where the officers relied upon the overwhelming weight of persuasive authority upholding the use of § 2703(d) to obtain the cell site records at issue here. [Doc. 142 at 9-10].

In this case, the officer's reliance on the SCA and the order issued by Magistrate Judge King was objectively reasonable. In

17

Krull, the Supreme Court extended the good faith exception to the exclusionary rule to subsequently-invalidated statutes, holding that the rule does not apply to officers who act in objectively reasonable reliance upon such statutes. Id. at 349-55, 107 S. Ct. at 1167-70. In this case, Defendant does not attack the constitutionality of § 2703(d), and the statute has not as yet been declared unconstitutional under any authority binding on this court. Therefore, I find that it was objectively reasonable for the officers to rely upon § 2703(d) in obtaining the historical cell site data in this case, and the exclusionary rule would be inapplicable, even if the Fourth Amendment applied to require a showing of probable cause. See Suarez-Blanca, 2008 WL 4200156, at *12 (reviewing case law on constitutional challenges to historical cell site data); Graham, 846 F. Supp. 2d at 405-06.

Likewise, under a strict Leon analysis, I conclude that it was objectively reasonable for the officers to rely upon Judge King's order granting authorization under the SCA. Judge King applied the standard set forth in § 2703(d), and there was no reason for the officers to believe they could not rely in good faith on her order.

Accordingly, even if the Fourth Amendment applied in this case to prevent the acquisition of these historical cell site records, the officers relied in good faith on a constitutional statute and a

18

valid order of the magistrate judge. Exclusion of the evidence would not, therefore, be an available remedy.

### VI.
### Conclusion

In conclusion, the undersigned **RECOMMENDS** that Defendant's particularized motion to suppress evidence, [Doc. 110], be **DENIED**, for the reasons set forth above.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 20th day of February, 2013.

    s/ *E. Clayton Scofield*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

19